EXHIBIT
A

1  CAROLYN HUNT COTTRELL (SBN 166977)
   NICOLE N. COON (SBN 286283)
2  SCHNEIDER WALLACE
   COTTRELL KONECKY
3  WOTKYNS LLP
   2000 Powell Street, Suite 1400
4  Emeryville, California 94608
   Telephone: (415) 421-7100
5  Facsimile: (415) 421-7105

6  KAREN C. CARRERA (SBN 165675)
   VIRGINIA VILLEGAS (SBN 179062)
7  ADALBERTO CORRES (SBN 301427)
   VILLEGAS CARRERA, LLP
8  170 Columbus Avenue, Suite 300
   San Francisco, California 94133
9  Telephone: (415) 989-8000
   Facsimile:  (415) 989-8028

10

11  Attorneys for Plaintiffs and the Proposed Class

12

13              SUPERIOR COURT OF CALIFORNIA
                COUNTY OF SAN FRANCISCO

14  ADRIANA GUZMAN, JUAN PABLO        Case No. **CGC-17-557169**
15  ALDANA LIRA, JONATHON POOT,
    on behalf of themselves and all others   **CLASS ACTION COMPLAINT**
16  similarly situated,
                                          (1) **EMPLOYMENT DISCRIMINATION:**
17          Plaintiffs,                        **DISPARATE TREATMENT ON THE BASIS**
                                              **OF RACE/NATIONAL ORIGIN (CALIFORNIA**
18        vs.                                 **GOVERNMENT CODE § 12940(a));**
                                          (2) **EMPLOYMENT DISCRIMINATION:**
19  CHIPOTLE MEXICAN GRILL, INC.,           **DISPARATE IMPACT ON THE BASIS OF**
20  and DOES 1-25, inclusive,               **RACE/NATIONAL ORIGIN (CALIFORNIA**
                                              **GOVERNMENT CODE § 12940(a));**
21          Defendants.                   (3) **HARASSMENT  ON THE BASIS OF**
                                              **RACE/NATIONAL ORIGIN (CALIFORNIA**
22                                            **GOVERNMENT CODE § 12940(j));**
                                          (4) **FAILURE TO PREVENT DISCRIMINATION**
23                                            **AND HARASSMENT (CALIFORNIA**
                                              **GOVERNMENT CODE § 12940(j)); AND**
24                                        (5) **RETALIATION (CALIFORNIA**
                                              **GOVERNMENT CODE § 12940(h))**
25

26

27                                        **TRIAL BY JURY DEMANDED**

28
                                                          **BY FAX**
                                                          ONE LEGAL LLC

─────────────────────────────────────────────
       CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
       *Guzman, et al. v. Chipotle Mexican Grill, Inc., et al.*

ENDORSED
FILED
Superior Court of California
County of San Francisco

FEB 17 2017

CLERK OF THE COURT
BY: _____ ARLENE RAMOS
                Deputy Clerk

**CLASS ACTION COMPLAINT**

Now come Plaintiffs Adriana Guzman, Juan Pablo Aldana Lira, and Jonathon Poot, on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs") in the above action, and file this Complaint and hereby allege the following:

**INTRODUCTION**

1.     Plaintiffs bring this class action on behalf of themselves and all other similarly situated individuals who are of Hispanic race and/or Mexican national origin and who worked for Defendant Chipotle Mexican Grill, Inc. and Does 1-25 ("Defendant" or "Chipotle") in California as hourly employees. Plaintiffs bring this class action to challenge Chipotle's illegal corporate policies and practices that systematically discriminate against Plaintiffs and proposed Class Members on the basis of their Hispanic race and/or Mexican national original under California law, including the Fair Employment and Housing Act, California Government Code §§ 12940 *et seq.* ("FEHA").

2.     Specifically, this is a class action against Chipotle for: (1) employment discrimination – disparate treatment on the basis of race/national origin; (2) employment discrimination – disparate impact on the basis of race/national origin; (3) harassment on the basis of race/national origin; (4) failure to prevent discrimination and harassment; and (5) retaliation.

3.     As a result of these violations, Plaintiffs seek back pay and front pay, compensatory damages, punitive damages, penalties, interest, reasonable attorneys' fees and costs for those employees who were adversely affected by Chipotle's policies and practices.

4.     Plaintiffs also seek declaratory and injunctive relief to correct Chipotle's unlawful employment practices that discriminate on the basis of race and national origin.

**PARTIES**

5.     Plaintiff Guzman, an adult female, is a resident of San Francisco County, California. Plaintiff Guzman was employed by Defendant from April 2007 through May 2012. Guzman worked at the Chipotle location located at 126 New Montgomery Street, San Francisco, California. Guzman is Hispanic and of Mexican national origin.

1      6.    Plaintiff Lira, an adult male, was a resident of San Francisco County during the acts

2  alleged herein. Plaintiff Lira was employed by Defendant from January 2008 through January

3  2013. Lira began working at a Chipotle location in Newark, California. Later, he transferred to a

4  Chipotle restaurant located at 126 New Montgomery Street, San Francisco, California. Lira is

5  Hispanic and of Mexican national origin.

6      7.    Plaintiff Poot, an adult male, is a resident of San Francisco County, California.

7  Plaintiff Poot was employed by Defendant from October 2003 through January 2012. Poot worked

8  at the Chipotle location located at 126 New Montgomery Street, San Francisco, California. Poot is

9  Hispanic and of Mexican national origin.

10      8.    Defendant Chipotle is a fast-food restaurant chain, specializing in tacos and burritos.

11  It was founded in 1993, and operates throughout the United States as well as internationally. It is

12  incorporated in Delaware, and headquartered in Denver, Colorado. Chipotle does business and

13  operates in California, and at all relevant times, was and is an employer as defined by the FEHA,

14  Government Code § 12926(d). Chipotle is an entity with more than five employees, specifically

15  employing tens of thousands of hourly workers including those who are Hispanic and of Mexican

16  national origin.

17      9.    Defendants Does 1-25 are sued herein under fictitious names.  Their true names and

18  capacities are unknown to Plaintiffs.  Plaintiffs are informed and believe and thereon allege that

19  each of these fictitiously named Defendants are responsible in some way for the occurrences herein

20  alleged, and Plaintiffs' damages as herein alleged were caused by Defendants.  When the true

21  names of Does 1-25 are ascertained, Plaintiffs will amend this Complaint by inserting their true

22  names and capacities herein.

23      10.    Plaintiffs are informed, believe, and allege that at all times mentioned in this

24  Complaint, Defendants were the agents and employees of their Co-Defendants and in doing the

25  things alleged in this Complaint were acting within the course and scope of such agency and

26  employment.  Plaintiffs are further informed, believe, and thereon allege that each of the

27  Defendants, as officers, directors, and/or managing agents of Chipotle, had advance knowledge

28  and/or consciously disregarded the facts alleged herein. Moreover, Defendants, as officers,

1   directors, and/or managing agents of Chipotle, gave consent to, ratified, and authorized the

2   wrongful acts for which damages are sought as alleged herein.  Defendants are sued both in their

3   own right and on the basis of respondent superior.

4          11.     Plaintiffs are informed, believe, and allege that Defendants are either solely or

5   jointly and severally liable for damages including back pay, job benefits, and other economic and

6   noneconomic damages.  These damages are owed to Plaintiffs under common law and by statute,

7   and include attorneys' fees and costs.

8   **JURISDICTION AND VENUE**

9          12.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

10         13.     Jurisdiction is proper because Plaintiffs reside in California, and Defendants do

11  business or reside in California.

12         14.     Venue is proper as actions giving rise to this lawsuit occurred in San Francisco

13  County as well as throughout California. (Gov. Code § 12965(b).)

14         15.     Plaintiffs have exhausted their administrative remedies by filing a charge of

15  harassment, discrimination, and retaliation with the California Department of Fair Employment

16  and Housing ("DFEH") and the United States Equal Employment Opportunity Commission

17  ("EEOC"), alleging conduct supporting each of the causes of action alleged herein, within the time

18  frame provided by law. Specifically, Plaintiff Poot filed his charge on November 12, 2012, and

19  Plaintiffs Guzman and Lira filed their charges on January 23, 2013. The DFEH and EEOC have

20  issued notices of Plaintiffs' "right to sue" Defendants.  EEOC issued the "right to sue" for all three

21  Plaintiffs on November 23, 2016.  Accordingly, Plaintiffs file their State action before the federal

22  right to sue period expired, 90 days after the notice of "right to sue."

23  **FACTUAL ALLEGATIONS**

24         16.     Plaintiffs and proposed Class Members are individuals of Hispanic race and/or

25  Mexican national origin who are current and former hourly employees of Chipotle who worked at

26  restaurant locations throughout California. They work as hourly employees, including but not

27  limited to, in the positions of Crew, Kitchen Manager, Service Manager, or Apprentice – among

28  others.

1       17.    Pursuant to its corporate policies and practices, Chipotle engages in pervasive,

2   systemic discrimination, harassment, and retaliation on the basis of race and national origin.

3   Chipotle's discriminatory policies and practices specifically target individuals and employees who

4   are Hispanic and/or of Mexican national origin.

5       18.    Chipotle focuses its attention on individuals who are Hispanic and/or of Mexican

6   national origin, who have poor English-speaking skills or speak with an accent. It discriminates,

7   harasses, and retaliates against these individuals and employees in a number of ways.

8       19.    Chipotle discriminates against job applicants, who are Hispanic and/or of Mexican

9   national origin and have poor English-speaking skills or speak with an accent. Chipotle fails to hire

10  and denies employment to these individuals on these bases, although they are otherwise qualified

11  for the positions for which they apply. Plaintiffs are informed and believe that similarly situated

12  job applicants, who are not Hispanic and/or of Mexican national origin, are not subject to this type

13  of conduct.

14      20.    With respect to those individuals who already work or have worked at Chipotle,

15  Chipotle has maintained and continues to maintain pervasive policies, patterns, and/or practices of

16  discrimination, harassment, and retaliation on the basis of race and national origin.

17      21.    Chipotle routinely fails to follow its "Career Path" policies with respect to

18  employees who are Hispanic and/or of Mexican national origin and have poor English-speaking

19  skills or speak with an accent. Chipotle refuses to promote employees who are Hispanic and/or of

20  Mexican national origin and have poor English-speaking skills or speak with an accent, although

21  they are otherwise qualified for promotions. Plaintiffs are informed and believe that similarly

22  situated employees, who are not Hispanic and/or of Mexican national origin, are not subject to this

23  type of conduct.

24      22.    Instead of fairly treating employees who are Hispanic and/or of Mexican national

25  origin, Chipotle further effectuates its discriminatory policies and practices by falsifying work

26  performance reviews of these employees. Chipotle wrongly scrutinizes employees who are

27  Hispanic and/or of Mexican national origin, treats them more harshly, and ultimately provides

28  them with unsubstantiated poor performance reviews. Chipotle engages in such conduct towards

4

1    employees who are Hispanic and/or of Mexican national origin and have poor English-speaking

2    skills or speak with an accent in attempts to terminate them from the workforce. Plaintiffs are

3    informed and believe that similarly situated employees, who are not Hispanic and/or of Mexican

4    national origin, are not subject to this type of conduct.

5         23.     Chipotle also subjects employees, who are Hispanic and/or of Mexican national

6    origin and have poor English-speaking skills or speak with an accent, to a pattern of harassment (in

7    the form of verbal taunting, offensive and harassing language, and racial jokes) regarding their

8    English skills and accents. Chipotle attempts to create an unbearable, hostile work environment for

9    these employees, with the goal of forcing their resignations. Plaintiffs are informed and believe

10    that similarly situated employees, who are not Hispanic and/or of Mexican national origin, are not

11    subject to this type of conduct.

12         24.     Should employees, who are Hispanic and/or of Mexican national origin, fail to quit,

13    Chipotle subjects them to further discrimination and retaliation. Despite being ready and able to

14    work, Chipotle employees who are Hispanic and/or of Mexican national origin face

15    unsubstantiated, wrongful terminations. Chipotle wrongfully dismisses them from  employment on

16    the basis that they are Hispanic and/or of Mexican national origin and have poor English-speaking

17    skills or speak with an accent, although the employees are qualified to work and are performing

18    well. Plaintiffs are informed and believe that similarly situated employees, who are not Hispanic

19    and/or of Mexican national origin, are not subject to this type of conduct. Chipotle retains similarly

20    situated non-Hispanic employees.

21         25.     A pattern and practice of discrimination exists at Chipotle in light of corporate

22    policies and practices that adversely impact  Hispanic and/or people of Mexican national origin.

23         26.     Plaintiffs and other proposed Class Members, who are Hispanic and/or of Mexican

24    national origin, are treated differently and worse than non-Hispanic workers by Chipotle because

25    of or motivated by their race and/or their national origin.

26         27.     Chipotle also fails to take adequate measures to prevent and stop unfair treatment of

27    employees, who are Hispanic and/or of Mexican national origin.

28

1        28.    In fact, Chipotle failed to take any action to remedy complaints of race and/or

2  national origin discrimination when such complaints were brought to management's attention.

3        29.    Chipotle acted knowingly, intentionally and with reckless disregard for and callous

4  indifference to Plaintiffs' and proposed Class Members' protected civil rights.

5        30.    As a direct, natural, proximate, and foreseeable result of Chipotle's actions, Plaintiffs

6  and proposed Class Members have suffered past and future pecuniary losses as well as and other

7  non-pecuniary losses.

8        31.    The actions of Chipotle exhibited oppression, malice, gross negligence, willful or

9  wanton misconduct, or reckless disregard for Plaintiffs' and proposed Class Members' civil rights

10  so as to entitle Plaintiffs and proposed Class Members to an award of punitive damages against

11  Chipotle to punish Chipotle for its conduct and to deter the company and others like them from

12  such conduct in the future.

13                   **FACTUAL ALLEGATIONS AS TO THE NAMED PLAINTIFFS**

14        32.    The Named Plaintiffs' employment experiences were consistent with the factual

15  allegations set forth above, and are incorporated herein. Chipotle subjected Named Plaintiffs to its

16  policies, practices, and patterns of discrimination on the basis of race and national origin.

17        33.    In light of its corporate policies and practices, Chipotle targeted Named Plaintiffs

18  because they are Hispanic and of Mexican national origin. They faced pervasive, systemic

19  discrimination, harassment, and retaliation on the basis of their race and national origin.

20                           **Plaintiff Guzman**

21        34.    Plaintiff Guzman began working for Chipotle at a restaurant located at 126 New

22  Montgomery Street, San Francisco, California in approximately April 2007. She worked there

23  continuously until she was terminated on May 24, 2012.  Her last position at Chipotle was that of

24  Apprentice.

25        35.    When she was hired, Chipotle informed Plaintiff Guzman that it has a "Career Path"

26  that follows a five step path from "crew" towards ultimately becoming a "Restaurateur."

27  According to Chipotle, all employees have an opportunity to move up that career path.

28

1    36.    However, Chipotle failed to fairly apply this corporate policy to employees, who are

2    Hispanic and/or of Mexican national origin. Chipotle failed to promote employees, who are

3    Hispanic and/or of Mexican national origin. Instead, Chipotle discriminated, harassed, and

4    retaliated against them on the basis of their English-speaking skills and accents.

5    37.    Plaintiff Guzman believes that in approximately mid to late 2008, Chipotle's policy

6    changed. It began an effort to get rid of all Latino employees and/or those Latino employees who

7    spoke English with an accent and ceased the promotion and hiring of Latinos and/or those Latino

8    employees who spoke English with an accent. She believes this because in approximately 2008,

9    Bernice Vasquez (her General Manager at the time) called a restaurant-wide meeting held in

10   Spanish, where she announced that Chipotle was demanding that every one that works for Chipotle

11   must speak English and that she could no longer protect anyone that does not.

12   38.    When Plaintiff Guzman began working at Chipotle as a crew member the large

13   majority of employees were Latinos and promotions up the "Career Path" were common. For

14   example, she was hired as a crew member and worked in that position for about 6 months. At the

15   time of her hire, Evange De Karisto (Caucasian) was the General Manager ("GM"), Berenice

16   Vasquez (Latina) was the Apprentice, Grethel Miranda (Latina) and Jose Alanis (Latino) were

17   Service Managers ("SM"), and Sebastian Torres (Latino) and Claudia Campos (Latina) were the

18   Kitchen Managers ("KM"). In addition to Plaintiff Guzman, there were 7 to 8 other crew members

19   on her shift, and they were primarily Spanish-speaking Latino employees.

20   39.    In approximately April or May 2007, Vasquez was promoted to GM. In

21   approximately October 2007, Vasquez promoted Plaintiff Guzman to KM. In approximately

22   December 2007, Torres was promoted to Apprentice, and in approximately April 2008, Plaintiff

23   Guzman was again promoted to SM by Vasquez.

24   40.    However, in approximately October 2008, Vasquez was terminated. After Vasquez

25   was terminated, Apprentice Sebastian Torres ran the restaurant until approximately, January 2009,

26   when Wes Cantor (Caucasian) was transferred from a Sacramento Chipotle restaurant and hired as

27   the new GM to replace Vasquez. Within a few months after starting as GM, Cantor fired: (1) the

28   Apprentice - Sebastian Torres (Latino); (2) Service Manager - Grethel Miranda (Latina); and (3)

1    Kitchen Manager - Jimmy (last name unknown) (Latino).  Plaintiff Guzman believes that Torres,

2    Miranda, and Jimmy were terminated because they are Latino and speak English with an accent.

3         41.    Additionally, in approximately early January 2012, De Karisto, held a meeting with

4    Guzman, Lira, Don Cravalho (Caucasian), and Kyi Zin (Asian). De Karisto stated that Chipotle

5    wanted to weed out the "low performers and told them that in addition to Poot, Jairo Donis, Leticia

6    Guzman, and Carmen Gonzalez, he wanted them to identify other 'low performers.'"  All the

7    supposed "low performers" identified by Mr. De Karisto were Spanish-speaking Latinos. Plaintiff

8    Guzman worked directly with each of the four supposed "low performers", and her opinion was

9    that they were not "low performers."

10        42.    On May 7, 2012, Plaintiff Guzman was suspended by Joanna Worley because she

11   refused to retract her allegations that the employees who had been identified as "low performers"

12   were not in fact "low performers" but that instead the list of alleged "low performers" was made

13   up of only Latino employees.

14        43.    Later during the month of January 2012, Mr. De Karisto called Guzman multiple

15   times to ask her if Poot, Donis, Guzman, and Gonzales had been fired yet. On one call, when

16   Plaintiff Guzman told De Karisto that none of the four had been fired, but that instead Sai had been

17   fired, De Karisto then yelled at her and angrily asked "why him and not others?" Plaintiff Guzman

18   told De Karisto that Sai was in fact a low performer, and that he had asked that they identify low

19   performers for termination.

20        44.    On approximately January 16, 2012, Poot was terminated for supposedly violating a

21   food preparation procedure. Poot was a 9-year employee, and Plaintiff Guzman was surprised by

22   his termination and the supposed reason for his termination. She believes that Poot was terminated

23   because he is Mexican/Latino and speaks English with an accent.

24        45.    Plaintiff Guzman is aware of other non-Latino workers who had more serious

25   violations than the one of which Poot was accused, but were not terminated. For example, Janice

26   Crawal, who had approximately 8 write ups, including one for getting into a physical altercation

27   with another employee, was not terminated despite the number of write ups she had. In fact, the

28   employee that Crawal got into the altercation with, Edgar Contreras (Latino) was terminated in

8

1  approximately September 2011, but Crawal was not.  Guzman believes that Contreras was

2  terminated because he is Latino and speaks English with an accent.

3      46.    When Plaintiff Guzman first attempted to move up from Crew to Kitchen Manager,

4  De Karisto failed Guzman because she allegedly did not use proper English terminology and yelled

5  at Guzman "When you speak English call me to give you the test!"

6      47.    When Douglas Guardado was hired, De Karisto, came to the restaurant and saw

7  Guardado working.  She yelled at Cravalho, "I told you to get rid of one trash, and you hire more

8  trash!"

9      48.    Furthermore, Plaintiff Guzman often heard De Karisto say "they are Mexican, they

10  are retarded" every time a Latino employee made a mistake.

11      49.    Additionally, despite Chipotle's policy to promote from within, in approximately

12  March 2010, Don Cravalho (Caucasian) was hired as an Apprentice, despite the fact that Plaintiff

13  Guzman had already been working as a SM for almost two years, and Vasquez had told her that

14  she was in line to be promoted to Apprentice.  Additionally, although Guzman was the SM, a

15  lower position than Apprentice, Chipotle forced her to train Cravalho.  Further, by September or

16  October 2010, Cravalho was promoted to GM after Castor was transferred from the restaurant.

17      50.    Ultimately, in March 2010, when Cravalho was hired as Apprentice, Plaintiff

18  Guzman believes she was passed up by Chipotle because she is Latina and speaks English with an

19  accent.

20      51.    Additionally, although she was repeatedly told that she was going to be promoted to

21  GM when the time was right, Chipotle promoted several Caucasian and/or non-Latino workers in

22  multiple restaurants, including Marcus Deanda, Castor, Jocelyn (last name unknown), Boris (last

23  name unknown), Kevin (last name unknown), Wendy (last name unknown), Angela (last name

24  unknown), and Nathaniel (last name unknown), to GM positions despite being employed by

25  Chipotle for less time than Plaintiff Guzman was employed. Plaintiff Guzman believes Chipotle

26  failed to promote her to the position of GM multiple times because she is Latina and speaks

27  English with an accent.

28

1    52.    Plaintiff Guzman is also aware of at least one other employee, Plaintiff Lira, that was

2  passed up for promotion because he is Latino and speaks English with an accent.  In approximately

3  October 2011, when Worley was interviewing Plaintiff Guzman for possible promotion to GM, she

4  asked who would replace Plaintiff Guzman as Apprentice if she were to be promoted to GM.  In

5  response, Plaintiff Guzman suggested Plaintiff Lira and Zin.  Worley responded that she should

6  know that Zin was leaving Chipotle. Furthermore, Plaintiff Guzman should know that Plaintiff

7  Lira "was not ready to be Apprentice because of his language skills".  Plaintiff Guzman informed

8  Worley that she believed that Plaintiff Lira was qualified for the promotion and that he was taking

9  English classes, but Worley refused to promote Plaintiff Lira on the basis of Chipotle's systematic

10  discriminatory practices.

11    53.    On May 24, 2012, Plaintiff Guzman was ultimately terminated. Chipotle informed

12  her that the grounds for her termination were that she supposedly told crew members about a list of

13  "low performers." This is untrue and unfounded. Ms. Guzman believes this reason was a pretext.

14  Ms. Guzman believes she was wrongfully terminated in for her complaints for refusing to support

15  Chipotle's discriminatory practices when she refused to terminate Poot, Donis, Guzman, and

16  Gonzales for being supposed "low performers."

17    54.    During her employment at Chipotle, Plaintiff Guzman was also witness to Chipotle's

18  discriminatory policies and practices towards job applicants, who are Hispanic and/of Mexican

19  national origin.

20    55.    For example, Plaintiff Guzman observed Marcus Deanda throw out at least one

21  application from a Latino job applicant without even reviewing it.  He saw the application,

22  laughed, and threw it in the trash and said "no good."  Plaintiff Guzman also heard Castor call a

23  Latino job applicant retarded after reviewing his job application.

24    56.    Additionally, in approximately January 2012, Cravalho (GM), and Guzman

25  interviewed Douglas Guardado. Plaintiff Guzman observed how Cravalho repeatedly wanted to

26  avoid hiring Guardado simply because he did not speak English.  During Guardado's interview,

27  although he met all "13 Characteristics" that Chipotle seeks as part of its "Crew Selection System"

28  Guardado did not speak English, and Cravalho expressed concern about hiring him simply because

1   he did not speak English. Cravalho said he did not feel comfortable hiring Guardado because he

2   would have a hard time communicating with Guardado.  Plaintiff Guzman told Cravalho that it

3   should not be a problem because he would have little communication with Guardado, Plaintiff

4   Guzman could communicate with Guardado, Guardado would have little contact with customers,

5   and the work manuals were in Spanish.  When Cravalho eventually agreed to give Guardado a

6   chance, this was met with hostility and anger by management.

7          57.     In approximately February 2012, after Guardado was hired, De Karisto, came to the

8   restaurant and saw Guardado working.  She yelled at Cravalho, "I told you to get rid of one trash

9   and you hire more trash!"

10         58.     As a result of the unlawful conduct described above, Plaintiff Guzman has suffered

11   extreme emotional distress, anxiety, and stress.

12         59.     Plaintiff Guzman is informed and believes that she was discriminated against,

13   harassed, and retaliated against based on her race and national origin.

14                                        **Plaintiff Lira**

15         60.     Plaintiff Lira began working for Chipotle at a restaurant located at Newark,

16   California in approximately January 2008 as a crew member.  In approximately September 2009,

17   he was transferred to a Chipotle restaurant located at 126 New Montgomery Street, San Francisco,

18   California and worked there until February 5, 2012, when he was moved to a Chipotle located at

19   525 Market Street, San Francisco, California. He worked there until approximately February 21,

20   2012, when he went out on a medical leave of absence.  On January 14, 2013, Lira went to

21   Chipotle and spoke to De Karisto to let him know that he was planning on returning to work at the

22   end of his medical leave of absence on January 18, 2013.  On January 14, 2013, De Karisto told

23   Lira that he had already been terminated.  At the time he went out on medical leave, he was

24   working as a SM.

25         61.     When Plaintiff Lira was hired, Chipotle informed him that it has a "Career Path" that

26   follows a five step path from "crew" towards ultimately becoming a "Restaurateur." According to

27   Chipotle all employees have an opportunity to move up that career path.  However, Plaintiff Lira

28   believes that Chipotle's policy changed and it began an effort to get rid of all Latino employees

1    and/or those Latino employees who spoke English with an accent and ceased the promotion and

2    hiring of Latinos and/or those Latino employees who spoke English with an accent.

3        62.    In approximately November 2011, Worley told Lira that he could help Chipotle get

4    rid of Poot.

5        63.    In approximately early January 2012, De Karisto, held a meeting with Lira, Guzman,

6    Cravalho, and Zin. De Karisto stated that Chipotle wanted to weed out the "low performers and

7    told the meeting participants that in addition to Poot, Donis, Leticia Guzman, and Carmen

8    Gonzalez, he wanted them to identify other "low performers."  All the supposed "low performers"

9    identified by De Karisto were Spanish-speaking Latinos. As SM, Lira worked directly with each of

10   the four supposed "low performers", and his opinion was that they were not "low performers."

11       64.    On approximately January 16, 2012, Poot was terminated for supposedly violating a

12   food preparation procedure.  Poot was a nine-year employee and Lira was surprised by his

13   termination and the supposed reason for his termination.  Lira believes that Poot was terminated

14   because he is Mexican/Latino and speaks English with an accent and not because of a supposed

15   violation of a food preparation procedure.  Lira believes this because other employees with more

16   serious violations were not terminated.  For example, Crawal, who had multiple write ups,

17   including one for getting into a physical altercation with another employee, was not terminated

18   despite the number of write ups she had.  In addition, Lira issued Crawal a write up for violating a

19   company policy and Cravalho tore it up.  Moreover, the employee with whom Crawal had got into

20   the altercation, Contreras, was terminated in approximately September 2011. But, Crawal was not.

21   Lira believes that Contreras was terminated because he is Latino and speaks English with an accent

22   and Crawal was not terminated because she is American.

23       65.    When Plaintiff Lira began working at Chipotle, he was hired as a crew member and

24   worked in that position until approximately December 2009.  In December 2009, he was promoted

25   to KM.  However, the first time he took the oral exam to be promoted to KM, De Karisto failed

26   Lira because he supposedly could not understand Lira's English.  In approximately January 2010,

27   Lira was promoted to SM by Alma Bravo who conducted his oral exam. Despite Lira's attempts to

28

1   move up to Apprentice, he was repeatedly passed over because he supposedly did not possess

2   sufficient English skills.

3         66.    Prior to August 2011, Chipotle had an HR position that was focused on providing

4   and/or assisting Chipotle employees in the development of their English skills but eliminated that

5   position in approximately 2011. Chipotle offered English classes to employees with limited

6   English skills that were deemed high performers by Chipotle. In or around July 2011, HR informed

7   Lira that he was classified as a high performer and would start receiving English classes.

8         67.    In October 2011, De Karisto told Lira that Chipotle would no longer offer English

9   classes because Chipotle's policy was that everyone speak English.

10        68.    In or around mid-2011, De Karisto began telling Lira that his English was horrible

11   and that he could never understand what Lira was saying. De Karisto would often make these

12   comments in front of other Chipotle employees.

13        69.    As a result of the unlawful conduct described above, Plaintiff Lira has suffered

14   extreme emotional distress, anxiety, and stress.

15        70.    Plaintiff Lira is informed and believes that he was discriminated against, harassed,

16   and retaliated against based on his race and national origin.

17                                    **Plaintiff Poot**

18        71.    In approximately October 2003, Plaintiff Poot began working for Chipotle at a

19   restaurant located at 126 Montgomery Street, San Francisco, California and worked there until

20   January 16, 2012, when he was wrongfully terminated working as a crew member.

21        72.    When Poot was hired, Chipotle informed him that it has a "Career Path" that follows

22   a five step path from "crew" towards ultimately becoming a "Restaurateur." According to

23   Chipotle, all employees have an opportunity to move up that career path if they chose.  However,

24   Poot believes that Chipotle's policy changed and it began an effort to get rid of all Latino

25   employees and/or those Latino employees who did not speak English or spoke  with an accent.

26        73.    Poot believes that Chipotle maintained discriminatory policies and practices against

27   employees who are Hispanic and/or of Mexican national origin because in approximately late

28

1   2008, Vasquez, the GM, called a meeting at the restaurant and told the employees that Chipotle

2   was "demanding" that everyone that works for Chipotle has to speak English.

3        74.    When Poot began working at Chipotle he was hired as a crew member and worked in

4   that position until he was terminated. During the over 8 years that Poot worked at Chipotle, he

5   performed his work satisfactorily. However, on approximately January 12, 2012 he was

6   suspended after allegedly violating a food preparation procedure. He was not given a warning or

7   an opportunity to defend himself. On January 14, 2012, Cravalho, the GM, called him and told

8   him to report to Chipotle on January 16, 2012 at 7:00 a.m. On January 16, 2012, Poot reported to

9   Chipotle at 7:00 a.m. as instructed and was fired by Cravalho.

10       75.    Poot believes the reason given for his termination was a pretext because other non-

11  Latino workers who had more serious work rule violations or multiple write-ups were not

12  terminated. For example, Crawal had several write-ups, including one involving a physical

13  altercation with Contreras. However, Crawal was not terminated.

14       76.    Defendant Chipotle classified employees of Hispanic descent and/or Mexican

15  national origin as "low performers" and targeted them to be terminated despite performing their

16  jobs satisfactorily.

17       77.    As a result of the unlawful conduct described above, Plaintiff Poot has suffered

18  extreme emotional distress, anxiety, and stress.

19       78.    Plaintiff Poot is informed and believes that he was discriminated against, harassed,

20  and retaliated against based on his race and national origin.

21                           **CLASS ACTION ALLEGATIONS**

22       79.    Plaintiffs bring this case as a class action on behalf of themselves and all others

23  similarly situated pursuant to Code of Civil Procedure § 382. The Class that Plaintiffs seek to

24  represent is defined as follows:

25
26             All current and former hourly employees of Chipotle, who are
               Hispanic and/or of Mexican national origin, and worked at
27             Chipotle restaurant locations in California (hereinafter referred to
               as the "Class")
28

1    80.    This action has been brought and may properly be maintained as a class action under

2  Code of Civil Procedure § 382 because there is a well-defined community of interest in the

3  litigation and the proposed class is easily ascertainable.

4         a.    **Numerosity**: The potential members of the Class as defined are so numerous

5  that joinder of all the members of the Class is impracticable.

6         b.    **Commonality**: There are questions of law and fact common to Plaintiffs and

7  the Class that predominate over any questions affecting only individual members of the

8  Class. These common questions of law and fact include, but are not limited to:

9              i.   Whether Chipotle's policies and practices discriminate against job

10  applicants, who are Hispanic and/or of Mexican national origin, on the basis of race

11  and/or national origin;

12             ii.  Whether Chipotle's policies and practices discriminate against

13  employees, who are Hispanic and/or of Mexican national origin, by disparately

14  treating these employees on the basis of race and/or national origin;

15            iii.  Whether Chipotle's policies and practices discriminate against

16  employees, who are Hispanic and/or of Mexican national origin, by having a

17  disparate impact on them on the basis of race and/or national origin;

18            iv.   Whether Chipotle's policies and practices harass and/or create a hostile

19  work environment for employees, who are Hispanic and/or of Mexican national

20  origin, on the basis of their race and/or national origin;

21            v.    Whether Chipotle's policies and practices fail to prevent discrimination

22  on the basis of race and/or national origin against employees, who are Hispanic

23  and/or of Mexican national origin;

24            vi.   Whether Chipotle's policies and practices fail to prevent harassment on

25  the basis of race and/or national origin against employees, who are Hispanic and/or

26  of Mexican national origin;

27            vii.  Whether Chipotle's policies and practices result in retaliation on the basis

28  of race and/or national origin towards employees, who are Hispanic and/or of

1    Mexican national origin;

2         viii.   Whether Chipotle's policies and practices resulting in discrimination,

3    harassment, and retaliation against. individuals and employees, who are Hispanic

4    and/or of Mexican national origin, on the basis of race and/or national origin

5    intentionally inflicted emotional distress on Plaintiffs and Class Members;

6         ix.   Whether Chipotle is liable for compensatory and punitive damages,

7    injunctive relief, and other equitable remedies; and

8         x.      The proper formula for calculating restitution, damages and penalties

9    owed to Plaintiffs and the Class as alleged herein.

10        c.      **Typicality**:  Plaintiffs' claims are typical of the claims of the Class.

11   Defendant's common course of conduct in violation of law as alleged herein has caused

12   Plaintiffs and proposed Class members to sustain the same or similar injuries and damages.

13   Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Class.

14        d.      **Adequacy of Representation**:  Plaintiffs are members of the Class, they do

15   not have any conflicts of interest with other proposed Class members, and will prosecute the

16   case vigorously on behalf of the Class.  Counsel representing Plaintiffs are competent and

17   experienced in litigating large employment class actions, including discrimination,

18   harassment, and retaliation class actions.  Plaintiffs will fairly and adequately represent and

19   protect the interests of the Class members.

20        e.      **Superiority of Class Action**:  A class action is superior to other available

21   means for the fair and efficient adjudication of this controversy.  Individual joinder of all

22   proposed Class members is not practicable, and questions of law and fact common to the

23   Class predominate over any questions affecting only individual members of the Class.  Each

24   proposed Class member has been damaged and is entitled to recovery by reason of

25   Defendant's illegal policies and/or practices.  Class action treatment will allow those

26   similarly situated persons to litigate their claims in the manner that is most efficient and

27   economical for the parties and the judicial system. The injury suffered by each Class

28   member, while meaningful on an individual basis, is not of such magnitude as to make the

1   prosecution of individual actions against Defendant economically feasible.  Individualized

2   litigation increases the delay and expense to all Parties and the Court.  By contrast, class

3   action treatment will allow those similarly situated persons to litigate their claims in the

4   manner that is most efficient and economical for the parties and the judicial system.

5          f.      In the alternative, the Class may be certified because the prosecution of

6   separate actions by the individual members of the Class would create a risk of inconsistent

7   or varying adjudication with respect to individual members of the Class, and, in turn, would

8   establish incompatible standards of conduct for Defendants.

9                           **FIRST CAUSE OF ACTION**
                        **Against Defendant Chipotle and Does 1-25**
10   **Employment Discrimination: Disparate Treatment on the Basis of Race/National Origin**
                             **(Cal. Gov't Code § 12940(a))**
11                        *on Behalf of Plaintiffs and the Class*

12          81.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

13          82.     At all times herein mentioned, California Government Code § 12940(a) was in full

14   force and effect and was binding upon Defendant Chipotle.  Section 12940(a) requires Defendant

15   Chipotle to refrain from discriminating against an employee on the basis of his or her "race" and

16   "national original", among other things.

17          83.     Throughout their employment with Chipotle, Plaintiffs and proposed Class Members

18   were subjected to continuous discriminatory treatment on the basis of their Hispanic race and/or

19   Mexican national origin.  Plaintiffs are informed and believe that similarly situated non-Hispanic

20   employees or those of Mexican national origin were not subject to this type of conduct.

21          84.     Defendant Chipotle violated Government Code § 12940(a) by discriminating against

22   Plaintiffs and proposed Class Members based on their race and national origin.  Specifically,

23   Plaintiffs and proposed Class Members were subjected to disparate treatment by Defendant when,

24   among other things, Plaintiffs and proposed Class Members failed to be hired by Chipotle on

25   account of their race and/or national origin, failed to be promoted on account of their race and/or

26   national origin, were harassed on account of their race and/or national origin, were retaliated

27   against on account of their race and/or national origin, and were terminated on account of their

28

1  race and/or national origin.  Defendant, notwithstanding its knowledge of allegations regarding

2  discrimination, harassment, and retaliation on the basis of race and national origin failed to take

3  reasonable steps to safeguard Plaintiffs and proposed Class Members, and Defendant failed to

4  respond effectively or adequately to Plaintiffs' and proposed Class Members' complaints of

5  harassment and discrimination.

6        85.    The aforementioned conduct of Defendant constitutes a continuing violation of

7  Plaintiffs' and proposed Class Members' rights from the first act to the last act.

8        86.    Defendant is strictly liable for the conduct of its owner, managers, and supervisors.

9        87.    As a direct, foreseeable, and proximate result of Defendant's discriminatory acts,

10  Plaintiffs and proposed Class Members have suffered and continue to suffer losses, and have

11  suffered and continue to suffer humiliation, embarrassment, mental and emotional distress and

12  discomfort.  The precise amount of Plaintiffs' and proposed Class Members' damages will be

13  proven at trial.

14       88.    Defendant committed the acts herein alleged maliciously, fraudulently, and

15  oppressively with the wrongful intention of injuring Plaintiffs and proposed Class Members.

16  Defendant acted with an improper and evil motive amounting to malice, in conscious disregard of

17  Plaintiffs' and proposed Class Members' rights.  Because the acts taken toward Plaintiffs and

18  proposed Class Members were carried out by and/or authorized and ratified by officers, directors,

19  and/or managing agents, acting in a despicable, deliberate, cold, callous and intentional manner in

20  order to injure and damage Plaintiffs and proposed Class Members, Plaintiffs are entitled to

21  recover punitive damages in an amount according to proof.

22       **WHEREFORE**, Plaintiffs and proposed Class Members pray for judgment against

23  Defendant as set forth below.

24                  **SECOND CAUSE OF ACTION**
                  **Against Defendant Chipotle and Does 1-25**
25  **Employment Discrimination: Disparate Impact on the Basis of Race/National Origin**
                  **(Cal. Gov't Code § 12940(a))**
26                  *on Behalf of Plaintiffs and the Class*

27       89.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

28

90.   At all times herein mentioned, California Government Code § 12940(a) was in full force and effect and was binding upon Defendant Chipotle.  Section 12940(a) requires Defendant Chipotle to refrain from discriminating against an employee on the basis of his or her "race" and "national original", among other things.

91.   Throughout their employment with Chipotle, Plaintiffs and proposed Class Members were subjected to continuous discriminatory impacts on the basis of their Hispanic race and/or Mexican national origin.  Plaintiffs are informed and believe that similarly situated non-Hispanic employees or those of Mexican national origin were not subject to such impacts.

92.   Defendant Chipotle violated Government Code § 12940(a) by discriminating against Plaintiffs and proposed Class Members based on their race and national origin.  Specifically, Plaintiffs and proposed Class Members were subjected to the disparate impacts of  Defendant's policies and practices when, among other things, Plaintiffs and proposed Class Members failed to be hired by Chipotle on account of their race and/or national origin, failed to be promoted on account of their race and/or national origin, were harassed on account of their race and/or national origin, were retaliated against on account of their race and/or national origin, and were terminated on account of their race and/or national origin.  Defendant, notwithstanding its knowledge of allegations regarding discrimination, harassment, and retaliation on the basis of race and national origin failed to take reasonable steps to safeguard Plaintiffs and proposed Class Members, and Defendant failed to respond effectively or adequately to Plaintiffs' and proposed Class Members' complaints of harassment and discrimination.

93.   The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' and proposed Class Members' rights from the first act to the last act.

94.   Defendant is strictly liable for the conduct of its owner, managers, and supervisors.

95.   As a direct, foreseeable, and proximate result of Defendant's discriminatory acts, Plaintiffs and proposed Class Members have suffered and continue to suffer losses, and have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress and discomfort.  The precise amount of Plaintiffs' and proposed Class Members' damages will be proven at trial.

1      96.     Defendant committed the acts herein alleged maliciously, fraudulently, and

2  oppressively with the wrongful intention of injuring Plaintiffs and proposed Class Members.

3  Defendant acted with an improper and evil motive amounting to malice, in conscious disregard of

4  Plaintiffs' and proposed Class Members' rights.  Because the acts taken toward Plaintiffs and

5  proposed Class Members were carried out by and/or authorized and ratified by officers, directors,

6  and/or managing agents, acting in a despicable, deliberate, cold, callous and intentional manner in

7  order to injure and damage Plaintiffs and proposed Class Members, Plaintiffs are entitled to

8  recover punitive damages in an amount according to proof.

9      **WHEREFORE**, Plaintiffs and proposed Class Members pray for judgment against

10  Defendant as set forth below.

11  

**THIRD CAUSE OF ACTION**
**Against Defendant Chipotle and Does 1-25**
**Harassment on the Basis of Race/National Origin**
**(Cal. Gov't Code § 12940(j))**
*on Behalf of Plaintiffs and the Class*

12

13

14

15      97.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

16      98.     At all times herein mentioned, California Government Code § 12940(j) was in full

17  force and effect and was binding upon Defendant.  Section 12940(j) requires Defendant to refrain

18  from harassing an employee on the basis of her "race" and "national origin", among other things.

19      99.     Defendant violated the law, subjecting Plaintiffs and proposed Class Members to

20  race and national origin harassment amounting to a hostile environment. Throughout their

21  employment at Chipotle, Plaintiffs and proposed Class Members were subjected to unwelcome

22  racial and national origin comments; the harassment was based on race and national origin; and the

23  harassment was so severe and pervasive that it altered the conditions of Plaintiffs' and proposed

24  Class Members' employment and created an abusive and hostile working environment.

25      100.    Throughout their employment with Defendant, Plaintiffs and proposed Class

26  Members were subjected to continuous, offensive, and harassing remarks regarding race and

27  national origin.  As set forth in the foregoing paragraphs, Plaintiffs and proposed Class Members

28  were harassed in the form of, *inter alia*, verbal taunting.

101.    Defendant Chipotle is strictly liable for the conduct of its managerial and other employees because it knew or should have known about the unlawful conduct but did nothing to remedy it.

102.    The severity and pervasiveness of the harassment caused Plaintiffs and proposed Class Members to suffer extreme anxiety.

103.    The aforementioned harassment was and remained continuous, systematic, and sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiffs' and proposed Class Members' employment.  Additionally, it created a hostile work environment that Defendant failed to remedy.

104.    Plaintiffs' and proposed Class Members' employment and/or terms of their employment and/or the avoidance of negative consequences in their employment were conditioned upon submission to the above-mentioned unwelcome statements and conduct.

105.    Defendant Chipotle knew or should have known of the harassment but failed to take corrective action in violation of Government Code § 12940.

106.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs and proposed Class Members' rights from the first act to the last act.

107.    As a direct, foreseeable, and proximate result of Defendant's harassing acts, Plaintiffs and proposed Class Members have suffered and continue to suffer losses, and have suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort.  The precise amount of Plaintiffs' and proposed Class Members' damages will be proven at trial.

108.    Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiffs and proposed Class Members.  Defendant acted with an improper and evil motive amounting to malice, in conscious disregard of Plaintiffs' and proposed Class Members' rights.  Because the acts taken toward Plaintiffs and proposed Class Members were carried out by and/or authorized and ratified by officers, directors, and/or managing agents, acting in a despicable, deliberate, cold, callous and intentional manner in

1  order to injure and damage Plaintiffs and proposed Class Members, Plaintiffs and proposed Class

2  Members are entitled to recover punitive damages in an amount according to proof.

3       **WHEREFORE**, Plaintiffs and proposed Class Members pray for judgment against

4  Defendant as set forth below.

**FOURTH CAUSE OF ACTION**
**Against Defendant Chipotle and Does 1-25**
**Failure to Prevent Discrimination and Harassment**
**(Cal. Gov't Code § 12940(j))**
*on Behalf of Plaintiffs and the Class*

5

6

7

8       109.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

9       110.    Defendant's conduct as alleged in this Complaint violates the FEHA, Government

10  Code § 12940, which prohibits workplace discrimination and harassment based on race and

11  national origin.

12       111.    Government Code § 12940(j)(1) requires an employer to take all reasonable steps

13  necessary to prevent discrimination and harassment from occurring.

14       112.    Defendant knew or should have known about discriminatory, harassing, and

15  retaliatory conduct based on race and national origin toward Plaintiffs and proposed Class

16  Members and was remiss in failing to take immediate and appropriate corrective action.

17  Defendant is also strictly liable for the conduct of its supervisors.

18       113.    Plaintiffs and proposed Class Members made Defendant aware of the unlawful

19  conduct described in this Complaint.  Furthermore, the unlawful conduct was so pervasive that

20  Defendant had actual and/or constructive knowledge of Defendant's conduct.  Defendant failed to

21  take immediate and effective steps to conduct a fair, impartial, and comprehensive investigation of

22  the harassment and failed to take prompt remedial action to stop of the harassment.

23       114.    In doing the acts and omissions set forth above, Defendant failed to take immediate

24  and appropriate corrective action to stop the discrimination and harassment reported by Plaintiffs

25  and proposed Class Members, and failed to prevent the harassment from occurring, thereby

26  violating Government Code § 12940(j)(1).

27       115.    Plaintiffs are informed, believe, and thereon allege that Defendant (a) had an

28

22

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Guzman, et al. v. Chipotle Mexican Grill, Inc., et al.*

1  ineffective policy regarding workplace discrimination and harassment; (b) had no effective

2  procedure for addressing or investigating complaints of discrimination and harassment; (c) failed

3  to effectively implement any procedure it may have had for investigating complaints of

4  discrimination and harassment; (d) did not adequately investigate Plaintiffs' and proposed Class

5  Members' complaints; and (e) failed to appropriately train its employees.  Defendant, by and

6  through its agents, knew or should have known about the harassing conduct toward Plaintiffs and

7  proposed Class Members, and was remiss in failing to take immediate and appropriate corrective

8  action.  Defendant is also strictly liable for the conduct of its supervisors.

9       116.   The aforementioned conduct of Defendant constitutes a continuing violation of

10  Plaintiffs' and proposed Class Members' rights from the first act to the last act.

11       117.   As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiffs and

12  proposed Class Members have suffered and continue to suffer losses, and have suffered and continue

13  to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiffs

14  and proposed Class Members' damage in an amount in excess of the minimum jurisdiction of this

15  court, the precise amount to be proven at trial.

16       118.   Defendant committed the acts herein alleged maliciously, fraudulently, and

17  oppressively, with the wrongful intention of injuring Plaintiffs and proposed Class Members and

18  acted with an improper and evil mode amounting to malice, in conscious disregard of Plaintiffs'

19  proposed Class Members' rights.  Because the acts taken towards Plaintiffs and proposed Class

20  Members' were carried out by and/or authorized and ratified by officers, directors, and/or managing

21  agents, acting in a despicable, deliberate, cold, callous and intentional manner in order to injure and

22  damage Plaintiffs and proposed Class Members, Plaintiffs and proposed Class Members are entitled

23  to recover punitive damages from Defendant in an amount according to proof.

24       **WHEREFORE**, Plaintiffs and proposed Class Members pray for judgment against

25  Defendant as set forth below.

26

27

28  ///

**FIFTH CAUSE OF ACTION**
**Against Defendant Chipotle and Does 1-25**
**Retaliation**
**(Cal. Gov. Code § 12940(h))**
*on Behalf of Plaintiffs and the Class*

119.    Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

120.    At all times herein mentioned, California Government Code § 12940(h) was in full force and effect and was binding upon Defendant. Section 12940(h) requires Defendant to refrain from retaliating against an employee for engaging in protected activity such as complaining about unlawful discrimination, among other things.

121.    Plaintiffs and proposed Class Members engaged in protected activity when they complained to Defendant regarding the discriminatory and harassing conduct to which they were subjected. Plaintiffs also engaged in protected activity when they filed a charge of harassment and discrimination with the DFEH and EEOC. After complaining, Plaintiffs and proposed Class Members were subjected to further harassment, adverse action, and retaliatory conduct, including, but not limited to, invalid criticisms of their performance, attempted constructive termination of their employment, ostracism in and from the workplace, and unlawful termination.

122.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' and proposed Class Members' rights from the first act to the last act.

123.    As a direct, foreseeable, and proximate result of Defendant's retaliatory acts, Plaintiffs and proposed Class Members have suffered and continue to suffer losses, and have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress and discomfort. The precise amount of Plaintiffs and proposed Class Members' damages will be proven at trial.

124.    Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiffs and proposed Class Members. Defendant acted with an improper and evil motive amounting to malice, in conscious disregard of Plaintiffs' and proposed Class Members' rights. Because the acts taken toward Plaintiffs and proposed Class Members were carried out by and/or authorized and ratified by officers, directors, and/or managing agents, acting in a despicable, deliberate, cold, callous and intentional manner in

1 | order to injure and damage Plaintiffs and proposed Class Members, Plaintiffs and proposed Class

2 | Members are entitled to recover punitive damages in an amount according to proof.

3 |      **WHEREFORE**, Plaintiffs and proposed Class Members pray for judgment against

4 | Defendant as set forth below.

5 | **PRAYER FOR RELIEF**

6 |      **WHEREFORE**, Plaintiffs makes the following demand:

7 |     a.     That process be issued and served as provided by law, requiring Defendant to appear

8 |           and answer or face judgment;

9 |     b.     That Plaintiffs have and recover a judgment against Defendant in an amount to be

10 |           determined at trial as general, special, actual, compensatory and/or nominal

11 |           damages;

12 |     c.     That Plaintiffs have and recover a judgment against Defendant for punitive damages

13 |           in an amount to be determined at trial sufficient to punish, penalize and/or deter

14 |           Defendant;

15 |     d.     That Plaintiffs have and recover a judgment against Defendant in an amount to be

16 |           determined at trial for expenses of this litigation, including, but not limited to,

17 |           reasonable attorneys' fees and costs;

18 |     e.     That Plaintiffs have and recover declaratory and/or injunctive relief  against

19 |           Defendant enjoining Defendant from engaging in each of the unlawful practices set

20 |           forth in this Complaint;

21 |     f.     That Plaintiffs recover pre-judgment and post-judgment interest; and

22 |

23 |

24 |

25 |

26 |

27 |

28 | ///

1      g.      That Plaintiffs receive such other relief as this Court deems just and appropriate.

2

3  Dated: February 17, 2017                  Respectfully submitted,

4

5                         SCHNEIDER WALLACE
                           COTTRELL KONECKY

6                         WOTKYNS LLP

7

8                       CAROLYN HUNT COTTRELL
                       NICOLE N. COON

9                       Attorneys for Plaintiffs and the Proposed Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Guzman, et al. v. Chipotle Mexican Grill, Inc., et al.*

1

**DEMAND FOR JURY TRIAL**

2          Plaintiffs hereby demand a jury trial on all claims and issues raised in the Complaint for

3   which Plaintiffs are entitled to a jury.

4

5   Dated: February 17, 2017                    Respectfully submitted,

6                                               SCHNEIDER WALLACE
                                                COTTRELL KONECKY
7                                               WOTKYNS LLP

8

9

10                                              CAROLYN HUNT COTTRELL
                                                NICOLE N. COON

11                                              Attorneys for Plaintiffs and the Proposed Class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28